KENJI M. PRICE #10523
United States Attorney
District of Hawaii

SEAN VAN DEMARK #10288
Assistant U.S. Attorney
Room 6-100, PJKK Federal Building
300 Ala Moana Boulevard
Honolulu, Hawaii 96850
Telephone: (808) 541-2850
Facsimile: (808) 541-2958
Email: Sean.Van.Demark@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

```
FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII
Apr 05, 2020
SUE BEITIA, CLERK
```

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> STORMY BUCKLEY, <br><br> Defendant. | MAG. NO. 20-00376KJM <br><br> CRIMINAL COMPLAINT; <br> AFFIDAVIT IN SUPPORT OF <br> CRIMINAL COMPLAINT |

## CRIMINAL COMPLAINT

I, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief:

<u>Count 1</u>
Felon in Possession of a Firearm and Ammunition
(18 U.S.C. §§ 922(g)(1) and 924(a)(2))

On or about April 4, 2020, within the District of Hawaii, STORMY BUCKLEY, the defendant, having been previously convicted of a crime punishable by imprisonment for a term exceeding one year, and knowing that he had been convicted of such a crime, did knowingly possess a firearm, namely a Savage Arms, model 30 series E, 12 gauge shotgun, serial number B806909, and ammunition, namely, ten rounds of 12 gauge ammunition, which includes , seven rounds of "bird shot," one round "00" buck shot, and two rounds of "rifled slug" ammunition, with said firearm and ammunition having been previously shipped and transported in interstate and foreign commerce.

All in violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(2).

//

//

//

//

//

//

//

I further state that I am a duly sworn law enforcement officer, federally cross-designated and deputized as a Special Deputy United States Marshal to serve on a United States Marshals Service Task Force, as a Task Force Officer (TFO) with the United States Marshals Service (USMS) Hawaii Fugitive Task Force (HFTF).

This complaint is based on the following affidavit which is attached hereto and made a part of this complaint by this reference.

DATED: April 5, 2020, Honolulu, Hawaii

_____
PATRICK LOO
Special Deputy U.S. Marshal / TFO
United States Marshals Service


This Criminal Complaint and Affidavit in support thereof were presented to, approved by, and probable to believe that the defendant above-named committed the charged crime found to exist by the undersigned Judicial Officer at 1:53pm on ___April 5___, 2020.


Sworn to under oath before me telephonically and attestation acknowledged pursuant to FRCP 4.1(b)(2)


this 5th day of April, 2020.



_____
Kenneth J. Mansfield
United States Magistrate Judge

KENJI M. PRICE #10523
United States Attorney
District of Hawaii

SEAN VAN DEMARK #10288
Assistant U.S. Attorney
Room 6-100, PJKK Federal Building
300 Ala Moana Boulevard
Honolulu, Hawaii 96850
Telephone: (808) 541-2850
Facsimile: (808) 541-2958
Email: Sean.Van.Demark@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, | MAG. NO. |
| Plaintiff, | CRIMINAL COMPLAINT; AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT |
| v. | |
| STORMY BUCKLEY, | |
| Defendant. | |

**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT**

I, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief:

## **INTRODUCTION**

1.  This affidavit is submitted for the purpose of establishing probable cause that on and about April 4, 2020, within the District of Hawaii, STORMY BUCKLEY (hereinafter referred to as "BUCKLEY" or "Defendant") engaged in conduct that violated 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

2.  I further state that I am a duly sworn law enforcement officer, federally cross-designated and deputized as a Special Deputy United States Marshal to serve on a United States Marshals Service Task Force, as a Task Force Officer (TFO) with the United States Marshals Service (USMS) Hawaii Fugitive Task Force (HFTF). As such, I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request an arrest warrant. I have more than nineteen years of experience as a duly sworn law enforcement officer, and I have received hundreds of hours of criminal investigation training. I have directed, conducted, and participated in hundreds of investigations involving, but not limited to: illegal narcotics, firearms, identity theft, financial fraud, larceny, fugitive apprehension, and crimes of violence. I completed sworn law enforcement training and hold a Honolulu Police Department (HPD) graduation certificate and commission from the Honolulu Police Department, which I completed at Ke Kula Maka'i - Honolulu Police Department Training Academy in

Honolulu, Hawaii. The Honolulu Police Department Training Academy is accredited by the Commission on Accreditation for Law Enforcement (CALEA). I hold a certificate of completion from the United States Marshals Service High Risk Fugitive Apprehension (HRFA) Training Program, which I completed at the Federal Law Enforcement Training Center in Glynco, Georgia. I am currently assigned to the United States Marshals Service (USMS) Hawaii Fugitive Task Force (HFTF) where my duties include, but are not limited to, conducting criminal investigations involving fugitives and fugitive apprehension. Through my training and experience, I have studied, learned, and have become familiar with the manner in which fugitives operate.

3. I am familiar with the facts set forth in this affidavit based upon my personal knowledge and/or information provided to me by other law enforcement personnel and/or witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the criminal complaint charging Defendant with violations of federal law. Accordingly, this affidavit does not set forth all of the facts known to me or to United States Marshals Service regarding this matter. Summaries and statements from conversations do not include references to all topics covered in the conversations. This affidavit is not intended to include each and every fact and matter observed or known to the government.

## **PROBABLE CAUSE**

4.     On March 31, 2020, a male, H.B., contacted the Honolulu Police Department (hereinafter "HPD"), and reported that his 1989 Oldsmobile bearing Hawaii license plates FEA 818 was stolen.  H.B. indicated to HPD officers that he suspected that another male known to him as Stormy BUCKLEY (hereinafter "BUCKLEY") stole the vehicle, as BUCKLEY is homeless and has drug related issues.

5.     On April 4, 2020, at about 4:40 a.m., HPD Officer(s) Micah ARELLANO (hereinafter "M.A."), Jacob MAYER, (hereinafter "J.M."), Nicholas SCHLAPAK (hereinafter "N.S."), and Keone KISSINGER (hereinafter "K.K.") were assigned to uniformed patrol in the East Honolulu area.

6.     That on aforementioned date, time, and location HPD Officer M.A. was dispatched to a "suspicious circumstance" type case involving a person revving their older model brown sedan.

7.     On April 4, 2020, HPD Officer M.A. observed an older model brown sedan fitting the in the area.  HPD Officer M.A. positioned his HPD vehicle to the rear of the brown sedan.  HPD Officer M.A. observed the brown sedan commit a couple traffic violations, then initiated a traffic stop of the aforementioned brown sedan.

8.     Officer M.A. observed that the brown sedan's rear Hawaii license plate read, FEA 818. That Officer M.A. initiated a vehicle check via HPD dispatch.  HPD

Officer M.A. observed the brown sedan pull over and come to a complete stop. Upon the brown sedan coming to a complete stop, HPD Officer M.A. approached the brown sedan from the rear driver's side.

9. That unbeknownst to HPD Officer M.A., HPD's dispatch identified the aforementioned vehicle bearing Hawaii license plates FEA 818, as a 1989 Oldsmobile 2-door sedan, brown in color, Status: Stolen / Outstanding (hereinafter "Oldsmobile").

10. That HPD Officer M.A. approached and made contact with the driver and sole occupant of Oldsmobile, later identified as Stormy BUCKLEY. HPD Officer M.A. related that he asked BUCKLEY for driver's license, insurance, and vehicle registration. BUCKLEY related that he had lost his driver's license, and did not have any documentation for the Oldsmobile he was driving.

11. That while awaiting to hear back from HPD dispatch, HPD Officer M.A. instructed BUCKLEY to turn off the vehicle. At which time, HPD Officer M.A. observed that the Oldsmobile had no key in the ignition which is a common indicator that a vehicle may be stolen.

12. That during HPD Officer M.A.'s verbal interaction with BUCKLEY, HPD Officer J.M. arrived at the scene of the aforementioned traffic stop. HPD Officer J.M. approached M.A. and discreetly informed him the Oldsmobile was confirmed, via HPD dispatch, as stolen.

13. On April 4, 2020, HPD Officer M.A. ordered BUCKLEY to exit the Oldsmobile, as HPD Officer J.M. simultaneously opened the Oldsmobile's driver door. HPD Officer M.A. attempted to secure BUCKLEY's hands, at which time BUCKLEY became non-compliant and combative, using physical force to break HPD Officer M.A.'s grips, while spontaneously uttering, "…the car not stolen, the car is not stolen, it's my brother's car!"

14. HPD Officer M.A. observed BUCKLEY making a furtive movement with both of his hands driving downward, toward the immediate floor board area under the middle / front passenger side seat. HPD Officer M.A. further observed BUCKLEY "reaching for an unknown object," under the middle / front passenger side seat.

15. BUCKLEY was continuing to resist, which required HPD Officer M.A. to physically get on top of/mount BUCKLEY in his attempt to gain control over his hands, while repeatedly yelling at him to stop resisting. BUCKLEY refused to comply, continued to resist, and attempted to fight off HPD Officer M.A.'s physical attempts to gain control of BUCKLEY.

16. That HPD Officer M.A. observed BUCKLEY continually reaching in/around his waist band area with one hand while continuing attempts to retrieve an unknown item from under the front middle / passenger side seat(s). The aggressive and forceful attempts to retrieve the aforementioned item(s) occurred at least six (6)

times, despite HPD Officer's numerous physical strength techniques, joint locks, and both open and closed hand strikes to BUCKLEY's head and body.  HPD Officer M.A. informed BUCKLEY that he was under arrest, and commanded him cease his active resistance, and to stop his continued attempts to reach under the Oldsmobile's front middle / passenger seat.

17.   With BUCKLEY's continued resistance, HPD Officer M.A. delivered additional closed fist strikes once gain to BUCKLEY's head and body, in an attempt to stop him from reaching under the seat.  That HPD Officer M.A.'s multiple strikes met with negative results, and BUCKLEY persisted in his endeavor struggle free, and to retrieve an item from under the seat.

18.   That based upon BUCKLEY's continuous physical resistance, unwillingness to comply, and relentless determination to reach under the vehicle's front seats, HPD Officer M.A. determined that BUCKLEY was attempting to reach for a weapon of some sort.  That continuously throughout the struggle, BUCKLEY alternated his hands going to/from his waist band area to the area under the front seat area.

19.   That HPD Officer J.M. arrived "on scene," and observed BUCKLEY resisting HPD Officer M.A.'s verbal commands and physical attempts to gain control over him.

20. That HPD Officer J.M. noticed that despite HPD Officer M.A's. utilization of force, BUCKLEY continued to resist, and appeared to be reaching for something under the front seat area. HPD Officer J.M. assisted HPD Officer M.A., and in doing so, utilized multiple physical techniques, joint locks, and strikes in an attempt to gain control over BUCKLEY, and place him under arrest. That the aforementioned use of force techniques met with negative results, and BUCKLEY continued to resist arrest, and seemed determined and focused in his efforts to retrieve "an item" from under the vehicle's front middle / passenger side seat.

21. That BUCKLEY's resistance continued, requiring more than the two (2) HPD Officers to effectively extricate him from the vehicle, in an attempt to place him under arrest.

22. That HPD Officer N.S. arrived on scene, and assisted HPD Officer(s) M.A. and J.M., who were still actively struggling with BUCKLEY. That HPD Officer N.S. employed a physical force technique in conjunction with HPD Officer(s) M.A. and J.M.'s use of force, utilizing physical strength techniques to remove BUCKLEY from the vehicle.

23. That HPD Officer K.K. arrived on scene, and observed BUCKLEY resisting arrest. That HPD Officer K.K assisted by employing a leverage based physical strength technique utilizing his shin area and entire body weight to stabilize

BUCKLEY's body, keeping him in a position of disadvantage, while HPD Officers placed leg restraints on him.

24. That BUCKLEY continued to pull his arms away in an attempt to keep HPD from placing him under arrest. BUCKLEY continued kicking and flaying outside of the vehicle.

25. That BUCKLEY's non-compliance and active resistance occurred for a duration of about two (2) minutes, and required the combined efforts of 4 HPD Officers in order to gain control of BUCKLEY; and restrain and him with handcuffs and leg restraints.

26. That upon finally securing BUCKLEY with handcuffs and leg restraints, HPD Officer J.M. conducted a Search Incidental to Lawful Arrest (hereinafter "SILA") of BUCKLEY's person. That at the time of arrest / SILA, BUCKLEY was wearing a dark colored sweater/jacket HPD Officer J.M.'s SILA resulted in the location and recovery of one (1) red colored shotgun shell/round/cartridge of ammunition from the front left pocket of BUCKLEY's sweater/jacket, and four (4) red colored shotgun shells/rounds/cartridges of ammunition from BUCKLEY's right sweater/jacket pocket.

27. That in an attempt to verify the Oldsmobile's Vehicle Identification Number, and ascertain the driving condition of the vehicle, HPD Officer M.A. observed, in plain view, what he recognized, through his training and experience as

a Police Officer, to be a "sawed-off shotgun." That the aforementioned firearm was located on the front floor board area of Oldsmobile.

28. That this observation was made from a distance of about 2 feet. HPD Officer M.A.'s vantage point afforded him a clear and unobstructed view of the firearm/shotgun. The aforementioned firearm/shotgun was located on the floor board of the Oldsmobile, pushed up against the middle and passenger side seat area. That HPD Officer M.A. observed that the firearm/shotgun was located in the same exact area that BUCKLEY repeatedly was reaching towards. The firearm/shotgun was located in arms reach of BUCKLEY during their struggle.

29. That HPD Officer N.S. recovered the aforementioned shotgun / firearm, later identified as a Savage Arms Model 30 Series E. The aforementioned shotgun/firearm was recovered from the floor board of the Oldsmobile. The shotgun/firearm was pushed up against the front of the middle and passenger side seat area. HPD Officer N.S. cleared and rendered the shotgun safe. In doing so, he observed that there were two (2) red colored shotgun ammunition shells/rounds/cartridges loaded in the magazine tube of the Savage Arms Model 30 Series E.

30. That HPD Officer N.S. measured the barrel length of the aforementioned Savage Arms Model 30 Series E utilizing a standardized tape measure. HPD Officer N.S. determined that the barrel was about 13 inches in length. He further observed

that the "shoulder stock" of the Savage Arms Model 30 Series E shotgun/firearm had been modified/shortened into a "pistol type grip." That HPD Officer N.S. submitted the recovered and submitted the Savage Arms Model 30 Series E shotgun/firearm into HPD evidence.

31.   That HPD Officer K.K. observed from a distance of about 2-3 feet, three (3) shotgun shells/rounds/cartridges located within the Oldsmobile. That one (1) shell/round/cartridge of ammunition was located near the accelerator/brake pedal area, the second shell/round/cartridge of ammunition was located on passenger floor board within an open container, and the third shell/round/cartridge of ammunition was located in the front driver's seat area of the Oldsmobile (partially obstructed by a bag).

32.   That HPD Officer J.M. took custody of and submitted all ten (10) of the recovered shells/rounds/cartridges of ammunition into HPD evidence.

33.   On April 4, 2020, BUCKLEY was transported, by HPD Officer J.M., to the HPD Alapai Station, via Queen's Medical Center for a medical clearance. That while in HPD Officer J.B.'s custody, BUCKLEY threatened him by stating, "…and you watch you haole karma, I going find you and get you back. Try wait til I see you in the streets."

34. A Criminalist with HPD's Scientific Investigative Section, test fired the Savage Arms Model 30 Series E shotgun/firearm and ammunition. HPD's Criminalist determined that the firearm and ammunition were in operating condition.

35. A check with the Criminal Justice Information System revealed that BUCKLEY is a convicted felon, and has been since 2009.

36. On April 4, 2020, an Interstate Nexus Special Agent from the Bureau of Alcohol, Tobacco, Firearms, and Explosives reviewed photographs of the firearm and ammunition; and concluded that both the firearm and ammunition were not manufactured in the State of Hawaii and had therefore travelled in interstate or foreign commerce.

//

//

//

//

//

//

//

//

//

//

## CONCLUSION

37. Based on the foregoing facts, I respectfully submit that probable cause exists to believe that STORMY BUCKLEY, the defendant, committed the aforementioned offenses.

Respectfully submitted,

PATRICK LOO
Special Deputy U.S. Marshal / TFO
United States Marshals Service

This Criminal Complaint and Affidavit in support thereof were presented to, approved by, and probable to believe that the defendant above-named committed the charged crime found to exist by the undersigned Judicial Officer at 1:53pm on ___April 5___, 2020.

Sworn to under oath before me telephonically and attestation acknowledged pursuant to FRCP 4.1(b)(2)

this 5th day of April, 2020.



Kenneth J. Mansfield
United States Magistrate Judge